**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**D'ERICA and ROGER BLACKMON, as Guardians**
**And Next Friends of E.B., a minor**                                      **PLAINTIFFS**

**V.**                                      **2:25CV00154 JM**

**MCGEHEE SCHOOL DISTRICT, et al,**                                      **DEFENDANTS**

**ORDER**

Pending is the motion to dismiss filed by Separate Defendants McGehee School District

(the "District"), Linda Tullos, Justin Holt, Marcus Haddock, Paul Prosser, Jeff Owyoung, Judy

Lattimore, Clark Pugh, and Toby Young (collectively the "District Defendants"). Plaintiffs have

responded. For the reasons set forth below, the motion is granted and the Complaint is dismissed.

I.        Facts as Alleged in the Complaint

On March 4, 2025, E.B., a student at McGehee High School ("MHS"), was found in

possession of a vape while at dance team practice in the MHS gym. The dance team coach,

Kayla Bryant, told E.B.'s parents what had occurred, and she would allow them to handle the

matter with E.B. without school involvement. The next morning Bryant informed Mrs.

Blackmon that Dean Marcus Haddock, who was in charge of discipline at MHS, had learned of

the incident and directed Bryant to turn the vape into the administration. Later, Bryant informed

Mrs. Blackmon that Dean Haddock believed the vape to be a controlled substance and would

question the girls with law enforcement present.

Mr. Blackmon arrived at MHS as E.B. was being questioned by Principal Paul Prosser,

Dean Haddock, and Chris Hawkins, the School Resource Officer and member of the McGehee

Police Department. Mr. Blackmon attempted to enter but was physically, forcibly restrained from

doing so by Haddock with the support of Hawkins. Mr. Blackmon made another attempt to enter

and was successful. E.B. was in tears and Dean Haddock told Mr. Blackmon that E.B. had made a full confession and would be suspended for two days for possession of a vape. He stated that the vape would be sent to a lab for testing.

Mrs. Blackmon, a former teacher, spoke with Assistant Superintendent Justin Holt about her concerns that there was a lack of compliance with her child's rights and proper procedure. At this time Holt mentioned the possibility of E.B.'s expulsion. Before noon, Principal Prosser called Mrs. Blackmon and informed her that Officer Tyler Perry of the McGehee Drug Task Force had come to the school, smelled the vape, and confirmed that it was marijuana. Prosser stated that the vape would no longer be sent to the lab for testing. Dean Haddock and Officer Hawkins referred the matter to the local authorities.

On March 10, 2025, the Blackmons, Alderman Leroy Hood, Principal Prosser, Dean Haddock, Officer Hawkins, and Coach Bryant met about the matter. Coach Bryant made clear that she did not see where the vape originated and Alderman Hood raised concerns that expulsion on questionable facts would be unfair. The Blackmons left the meeting with the impression that the District had not considered their issues. Later, Mrs. Blackmon spoke with Superintendent Linda Tullos and Coach Bryant. Tullos acknowledged that the District was guilty of procedural failings but stated that she still expected to recommend E.B.'s expulsion from school.

On March 14th, a meeting was held to determine whether E.B.'s diagnoses of ADHD, anxiety, and language disorder, were connected to her disciplinary infraction (also known as a "manifestation determination review hearing"). Plaintiffs felt there was an insufficient number of attendees who were familiar with E.B. in attendance. During the meeting, a 2021 evaluation of services for E.B. was discussed and Plaintiffs became aware that Principal Prosser had not disseminated E.B.'s 504 Plan for the current school year to her teachers.

After the meeting adjourned, Superintendent Tullos called Mrs. Blackmon to let her know that she would be recommending E.B.'s expulsion and that she would present her recommendation at a MHS School Board meeting to be held on Tuesday, March 18th at 9:00 a.m. Mrs. Blackmon immediately objected to the meeting time because E.B. had a psychiatrist appointment at 8:30 a.m. on the same morning in Monticello. Mrs. Blackmon explained that E.B.'s mental health had suffered because of the discipline issues. Regardless, Tullos refused to postpone the meeting even for a few hours to allow E.B. and her parents to attend. Further, legal counsel for the Blackmons requested a change in the setting so that he could attend the hearing. Tullos refused.

The meeting was held on March 18, 2025. School Board President Jeff Owyoung and three other members of the Board were present, Judy Lattimore, Clarke Pugh, and Toby Young. After calling the meeting to order and learning that neither the Blackmons nor their representative were present, Owyoung stated, "I don't think there will be an expulsion hearing at this time." (Complaint, Doc. No. 1 at ¶113). A motion to adjourn was carried by a vote of 4-0. Five minutes later, Owyoung called the meeting to order again and asked Assistant Superintendent Holt to give a recommendation to the Board. A vote was held, and the recommendation for expulsion of E.B. was accepted by a vote of 4-0. E.B. was expelled for the remainder of the school year. She would be allowed to return for the next school year but she would be unable to participate in any afterschool activities.

Two to three weeks after the meeting, Mrs. Blackmon learned that the vape in question was a product line that did not contain sufficient THC to meet the legal standard to qualify as marijuana. She obtained a lab report on the product, and in a meeting in April, tried to provide it to Holt. Holt declined to review or accept the report. The vape which had been in E.B.'s

possession was apparently lost.  However, Holt promised to expedite a review of the matter. Hours later, Holt informed Mrs. Blackmon that he had gone online and determined that the vape in question was different than the one in Mrs. Blackmon's report and he stated that if the vape had any amount of THC in it, it qualified as a controlled substance. Mrs. Blackmon provided the lab report to Prosser, Haddock, Tullos, Holt, and others and expressed her strong belief that scientific testing would be necessary to find her daughter delinquent. She stated that a video of the vape E.B. possessed would show that the vape could not contain a controlled substance. According to the Complaint, the video was in Holt's possession

On April 11, 2025, Officer Tyler Perry acknowledged that smelling a vape was not the appropriate way to identify whether it contained a controlled substance. The charges against E.B. were dismissed upon motion of the prosecutor. Mrs. Blackmon asked Superintendent Tullos to reconsider the expulsion based upon the dismissal of charges. Tullos stated that the matter remained closed. However, the Blackmons were allowed a brief time to speak at the MHS School Board meeting in May. They did not believe they were given a meaningful opportunity to discuss the mistreatment of their daughter and the wrongful expulsion.

Plaintiffs filed suit as guardians and next friends of E.B. alleging violations of the Due Process Clause of the United States Constitution through 42 U.S.C. § 1983, Equal Protection under the Fourteenth Amendment through § 1983, Title IX, Section 504 of the Rehabilitation Act, Title II of the ADA, the Individuals with Disabilities Education Act ("IDEA"), conspiracy in violation of §§ 1983 and 1985, and multiple state law claims arising from the expulsion of  E.B. from MHS. Plaintiffs seek damages, full rescission of E.B.'s expulsion, punitive damages, and attorney's fees. The District Defendants seeks dismissal of Plaintiffs' IDEA, ADA, Section 504, Equal Protection, Title IX, Due Process and conspiracy claims for failure to state a claim.

II.     Standard for Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Although "specific facts are not necessary," the plaintiff must allege facts sufficient to give "fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562. This standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Id.*

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, the Court must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). The Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555.

III.     Analysis

A.  Disability Claims

Plaintiffs state E.B.'s rights to equal treatment with non-disabled students, established by the ADA, Rehabilitation Act, Arkansas Civil Rights Act, and IDEA, have been violated based upon the facts alleged in the Complaint.

1.   Rehabilitation Act

"Standing ... is a jurisdictional requirement, and thus can be raised by the court sua sponte at any time during the litigation." *F.B. v. Our Lady of Lourdes Par. & Sch.*, 125 F.4th 898, 902 (8th Cir. 2025) (quoting *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156 (8th Cir. 2008)). Article III requires federal courts to "only adjudicate actual cases and controversies." *Id.* (citing *Pucket*, 526 F.3d at 1157.) "Article III standing enforces the Constitution's case-or-controversy requirement." *Id.* (citation omitted). A plaintiff must satisfy three elements to establish standing: (1) the plaintiff suffered an injury in fact, (2) [the injury] is fairly traceable to the challenged conduct of the defendant, and (3) [the injury] is likely to be redressed by a favorable judicial decision. *Id.* (citing *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024) (citations omitted)).

In *F.B. v. Our Lady of Lourdes Par. & Sch*, L.B., a student with disabilities, was expelled from school because the administrator felt that L.B. and her parents had threatened the principal. L.B. had a 504 plan. *Id.* at 901. Her parents filed suit alleging that the school had violated Section 504 when it failed to establish standards and procedures for the evaluation and placement of L.B. who needed special education service under 34 C.F.R. § 104.35, failed to provide L.B.'s parents with procedural safeguards of prior written notice and an opportunity for a hearing, and refused to provide a grievance procedure to resolve their complaints. *Id.* at 902-903. The

plaintiffs sought declaratory judgment and compensatory damages. Plaintiffs claimed that the injury was L.B.'s expulsion from school following her family's request for accommodation. The Eighth Circuit found that the plaintiffs did not have Article III standing to bring their claims under Section 504 against the school "because their alleged injury [was] not fairly traceable to the [school's action] and the relief sought would not redress their alleged injury." *Id.* at 899.

> The Eighth Circuit explained:

> Even if a plaintiff is able to "show injury in fact," the plaintiff must still "establish traceability." *Arc of Iowa*, 94 F.4th at 711. Under Article III, the plaintiff must show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Thus, the plaintiff "must ... establish that the plaintiff's injury likely was caused ... by the defendant's conduct." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024).

*F.B. v. Our Lady of Lourdes Par. & Sch.*, 125 F.4th at 903.

As in *Our Lady of Lourdes*, the Complaint fails to establish a causal connection between the regulatory violations and E.B.'s expulsion. E.B. was expelled because she possessed a vape on school grounds. There is no allegation in the Complaint that the District's failure to implement E.B.'s 504 plan or the staffing of the manifestation determination review hearing caused E.B.'s expulsion. Therefore, Plaintiffs have failed to satisfy the second element required to establish standing. Plaintiffs' Section 504 claims are dismissed.

2. IDEA

The District Defendants argue that Plaintiffs' disability claims should be dismissed because Plaintiffs failed to exhaust their administrative remedies prior to filing suit. Plaintiff responds, "Though there is some citation to the IDEA in the complaint, the disability claims are largely based on disproportionate expulsion of disabled students, violations of the provisions of

34 C.F.R. § 104.35. . . ." (Pl's Resp., Doc. No. 13 at p. 15). Therefore, it is unclear whether Plaintiffs are actually making a claim under the IDEA. Further, Plaintiffs do not argue that they exhausted their administrative remedies under the IDEA which is fatal to any IDEA claim. To the extent Plaintiffs make a claim under the IDEA it is dismissed.

3. ADA and ACRA

Plaintiffs are not generally required to exhaust administrative remedies under the ADA or the ACRA where they are seeking relief in the form of damages. *See Perez v. Sturgis Pub. Sch.,* 598 U.S. 142 (2023). In the Complaint, Plaintiffs state, "On information and belief, all other students expelled from MHS during the 2023-24 and 2024-25 school years receive some manner of disability accommodation." (Comp., Doc. No. 1 at ¶ 146). Even if this statement is true, it does not state a claim for disability discrimination. Plaintiffs have neither pled facts nor made any allegation E.B.'s disability was a factor behind the District's decision to expel E.B. *See Salau v. Denton,* 139 F.Supp.3d 989, 998 (W.D. Mo. 2015). The fact that all other students who were expelled during the two relevant school years received disability accommodation from MHS does not mean the students were expelled because of their disability, and Plaintiffs do not make that allegation. Therefore, the motion to dismiss Plaintiffs' ADA and ACRA claims is granted.

B. Gender Discrimination

In Count III, Plaintiffs allege that E.B was subjected to gender discrimination by the District Defendants. They cite broadly to the United States Constitution, the Arkansas Constitution,  42 U.S.C. § 1983, Title IX, "and other statutory and other authority. . .." (Comp., Doc. No. 1 at ¶ 155). To state a Title IX claim, plaintiff must allege adequately that the school disciplined the plaintiff on the basis of sex—that is, because the plaintiff is a male or female. *See*

*Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020). "To establish a gender-based claim under the Equal Protection Clause, [plaintiff] must, as a threshold matter, demonstrate that [she has] been treated differently by a state actor than others who are similarly situated simply because [plaintiff] belong[s] to a particular protected class." *Keevan v. Smith*, 100 F.3d 644, 647-48 (8th Cir. 1996).

There is only one allegation in the Complaint which invokes gender: " On information and belief, all other students found with a vape that did not contain a controlled substance were male." (Comp., Doc. No. 1 at ¶ 145). This allegation suffers from the same infirmity as Plaintiffs' disability claim. Even if this statement is true, it does not state a claim for gender discrimination. Plaintiffs have neither pleaded facts nor made any allegation that gender was a motivating factor behind the District Defendants' decision to expel E.B. *See Salau,* 139 F.Supp. 3d at 998. The District Defendants' motion to dismiss the gender discrimination claim under the United States Constitution, Title IX, and the ACRA is granted.

C. Due Process Claim

1. Procedural Due Process

It is well-established that a student's entitlement to public education is a protected property interest which may not be taken away for misconduct without adherence to the minimum procedures required by the Due Process Clause. *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Plaintiffs list thirteen (13) alleged violations of E.B.'s right to due process:

i. Pursuit of official discipline after agent of school told family that none would be pursued;
ii. Failure to adhere to promise not to use statements against E.B. after providing such assurance;
iii. Interrogation of student without parents present;
iv. Intentional exclusion of parents from interrogation;
v. Initiation and continuation of expulsion proceedings without proof that purported contraband was controlled substance;

vi.     Rushing through expulsion process without sufficient investigation or opportunity for E.B. to mount an appropriate response;

vii.     Unjustified refusal to reschedule expulsion hearing;

viii.     Unjustified decision to hold purported meeting after deciding not to do so;

ix.     "Reconvening," which in truth, is the holding of a new meeting without notice;

x.     The expulsion being the result of a recommendation of the Assistant Superintendent, in contravention of Arkansas law;

xi.     Refusing to reconsider in the face of evidence demonstrating that the basis of the expulsion was unsupported;

xii.     Other harms as supported by the record.

(Comp., Doc. No. 1 at ¶150).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "When conduct that leads to an adverse academic decision is of a disciplinary nature, due process may require the procedural protections of *Goss v. Lopez* in determining whether the student was guilty of the misconduct in question." *Keefe v. Adams*, 840 F.3d 523, 535 (8th Cir. 2016). *Goss* involved ten-day suspensions of public high school students, and many courts have used the *Goss* procedural protections as the minimum required for suspensions longer than ten days or expulsions.

The Supreme Court has not specifically addressed whether due process requires additional formal procedure for longer suspensions or expulsions. Instead, courts "have applied the balancing test from *Mathews v. Eldridge*. "Under *Mathews*, courts balance three factors to determine the required procedural protections: (1) the private interest affected by the official action; (2) 'the risk of an erroneous deprivation of such interest through the procedures used' and the probable value of additional procedure safeguards; and (3) the government's interest, 'including the fiscal or administrative burdens' of additional procedures." *Plaintiff A v. Park Hill Sch. Dist.*, 97 F.4th 586, 590 (8th Cir. 2024) (quoting *Mathews*, 424 U.S. at 321); s*ee also Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001) ("The three-factor test

from the *Mathews* decision, decided one year after *Goss*, is appropriate for determining when additional procedure is due because the test crystallizes the balancing of student interests against school interests suggested in the *Goss* decision.").

Plaintiffs argue that they were not given sufficient time to mount a response to the allegation that E.B. violated school policy by possessing a vape on campus which purportedly contained a controlled substance. This argument fails the *Mathews* balancing test. There is a low risk of an erroneous deprivation of Plaintiffs' interest because Plaintiffs received adequate notice and several opportunities to be heard. Plaintiffs met with school officials on three occasions: on March 5th, E.B was questioned by Principal Prosser, Dean Haddock, Officer Hawkins and at some point during that meeting her father was present; on March 10th, Plaintiffs met with the Alderman Hood, Principal Prosser, Dean Haddock, Officer Hawkins, and Coach Bryant; and on March 14th, Plaintiffs met with six District representatives and Principal Prosser. Plaintiffs were allowed to present their case at an MHS School Board meeting post-expulsion. Further, Mrs. Blackmon spoke with Assistant Superintendent Holt, Superintendent Tullos, and Coach Bryant at other times throughout the process. Additional procedures would unduly burden MHS.

Plaintiffs argue that there was an unreasonable refusal to reschedule the School Board hearing to a time more convenient for them. While rescheduling the meeting would not likely have been an undue burden, a hearing does not need to include "every procedure possible, nor is one entitled to a hearing of one's own design." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1139 (9th Cir. 2019)(citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Plaintiffs had notice of the hearing and chose to attend a counseling appointment instead. An opportunity to be heard is all that is required. *Goss*, 419 U.S. at 577–81 (holding that student facing a ten-day suspension is entitled to "an opportunity to present his side of the story."). Plaintiffs had that opportunity.

The remaining alleged violations of E.B.'s due process rights are without merit. Dean Haddock's refusal to abide by Coach Bryant's promise to allow parents to discipline E.B. does not rise to the level of a constitutional violation. While the questioning of E.B. by law enforcement without a parent may implicate state law, it does not violate her due process rights per se. "The fact that a valid school policy or state law was not followed is not by itself significant in determining whether procedural due process has been violated." *Vann ex rel. Vann v. Stewart*, 445 F. Supp. 2d 882, 888, 212 Ed. Law Rep. 746 (E.D. Tenn. 2006) (citing *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 226–27 (4th Cir. 1984); *Atencio v. Bd. of Educ.*, 658 F.2d 774 (10th Cir. 1981)).).

Moreover, with respect to all of the issues, Plaintiff has failed to demonstrate substantial prejudice as a result of any of the alleged denials of due process. *See Keough v. Tate County Board of Education*, 748 F.2d 1077, 1083 (5th Cir. 1984) ("To establish a denial of procedural due process, a party must show substantial prejudice."). As Plaintiffs state in the Complaint, E.B. made a full confession. (Comp., ECF No. 1 at ¶ 73).  Paragraph 11 and 12 of MHS's School Discipline Procedures prohibit possession of drugs, tobacco products, and tobacco substitute products, such as vapor cigarettes. *Id.* at ¶¶ 38-39.  The Procedures state that potential consequences for violation are a minimum two-day suspension and four hours of community service and a maximum of ten days' suspension with a possibility of expulsion. *Id.* at ¶ 40. Plaintiffs do not state how additional time to prepare a response or rescheduling the School Board hearing would have changed the outcome.

Finally, while the Court might have handled the scheduling of the School Board meeting differently, "'[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.' Those

12

judgments are best left to the voters who elect the school board." *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 627 (8th Cir. 2002) (quoting *Wood v. Strickland*, 420 U.S. 308, 326 (1975)). Plaintiffs' procedural due process claim fails.

E. Conspiracy

Plaintiffs alleges that all Defendants, the District Defendants and Officers Hawkins and Perry, conspired to violate E.B.'s constitutional rights. This claim fails because the Court finds there was no deprivation of civil rights.

F. State Law Claims

After dismissal of the federal claims, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(a), (c); *Crest Const. II, Inc. v. Doe,* 660 F.3d 346, 359 (8th Cir. 2011) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

IV. Conclusion

The District Defendants' motion to dismiss (Doc. No. 6) is GRANTED. Plaintiffs' conspiracy claims against Defendants Chris Hawkins and Tyler Perry are dismissed *sua sponte* for failure to state a claim. The Court declines to exercise supplemental jurisdiction over the state law claims against all Defendants. The jury trial scheduled for February 22, 2027 is canceled. The Clerk is directed to close the case.

IT IS SO ORDERED this 11th day of May, 2026.

_____
James M. Moody Jr
United States District Judge

13